# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 23-289V
Filed: February 27, 2026

```
* * * * * * * * * * * * * *
THOMAS WORRELL,                *
                               *
          Petitioner,          *
v.                             *
                               *
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *
                               *
          Respondent.          *
* * * * * * * * * * * * * *
```

*Sean F. Greenwood, Esq.,* The Greenwood Law Firm, Houston, TX, for petitioner.
*Sarah C. Duncan, Esq.,* US Department of Justice, Washington, D.C., for respondent.

### DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On February 27, 2023, Thomas Worrell ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). Petitioner alleged that he developed granulomatosis with polyangiitis ("GPA") after receiving a tetanus, diphtheria, pertussis ("Tdap") vaccine on February 27, 2020. *See* Petition at 1, ECF No. 1.

On December 5, 2025, petitioner's counsel filed a motion to withdraw as attorney, stating he has been unable to obtain an expert to opine on causation despite efforts to do so and petitioner has not responded to recent communications about this issue. ECF No. 66. Petitioner then filed a Motion for Interim Attorneys' Fees and Costs on January 9, 2026, seeking $37,623.30 in fees and $3,132.04 in costs. Motion for Interim Fees, ECF No. 67. Respondent filed his response to the

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Motion for Interim Fees on January 22, 2026, raising reasonable basis. Response, ECF No. 68. Petitioner filed a reply on January 29, 2026. Reply, ECF No. 69.

After careful consideration, petitioner's Motion for Interim Fees is **GRANTED** for the reasons set forth below.

## I.    Procedural History

Petitioner filed his petition on February 27, 2023, along with some of his medical records. Petitioner's Exhibits ("Pet. Ex.") 1-8, ECF No. 1. While in Pre-Assignment Review, petitioner continued to file his medical records. Pet. Ex. 9-24, ECF Nos. 6-22. A statement of completion was filed on June 30, 2023. ECF No. 23.

The case was reassigned to the undersigned on November 15, 2023. ECF Nos. 28-29. Respondent filed a status report on February 13, 2024, identifying medical records that remained outstanding, specifically records regarding earaches for which petitioner was prescribed antibiotics in February of 2020. ECF No. 32. Petitioner filed additional medical records on April 8, 2024 and a status report on April 12, 2024, advising that the facilities that would have had the records requested were unable to locate any responsive records and confirming that all available records had been filed. Pet. Ex. 25-28, ECF Nos. 34-35.

Respondent then requested petitioner file insurance benefit statements regarding petitioner's earaches in February of 2020. ECF No. 36. Petitioner filed a status report on June 11, 2024, advising that counsel requested records from two insurance companies but was unable to produce such records "due to the insurance company's unresponsiveness to Petitioner's diligent requests." ECF No. 38. Petitioner was ordered to file motions to issue subpoenas, which he filed on July 3, 2024. ECF Nos. 39-41. Petitioner filed records from one insurance company on August 21, 2024. Pet. Ex. 29. He then filed a status report on October 30, 2024, advising that the subpoena was served on the second insurance company, was ignored with no records produced. ECF No. 45.

Respondent filed a status report on November 25, 2024, stating that there were two insurance claims from March 5 and 10, 2020 with Dr. Hudson, and based on the ICD-9 codes, the encounters were for otitis media and petitioner received at least one prescription at each encounter. Respondent believed those were likely the missing encounters for earaches respondent requested, but he was unable to locate any records from Dr. Hudson in the records filed thus far. ECF No. 47.

Petitioner filed additional medical records on March 6 and 12, 2025. Pet. Ex. 30-31, ECF Nos. 52-53. Respondent confirmed the records appeared to be complete on March 13, 2025. ECF No. 55.

Respondent filed his Rule 4(c) Report on April 23, 2025, requesting that petitioner file additional medical records. ECF No. 56. Petitioner filed further records on July 1, 2025; on July 9, 2025; and on August 26, 2025. Pet. Ex. 32-34, ECF Nos. 59-60, 62. He filed a motion for extension of time to file the social security records, which was granted. ECF No. 63. He filed another motion for extension to file the records and requested to proceed with expert reports in the

interim. ECF No. 64. Petitioner's motion was granted, and a deadline was set for the outstanding records and an expert report. ECF No. 65.

On December 5, 2025, petitioner's counsel filed a motion to withdraw as attorney, stating he was unable to obtain an expert in this matter and that he has not heard from petitioner on this issue despite attempted contact. ECF No. 66. Counsel was ordered to file a motion for interim attorneys' fees and costs before the motion to withdraw was ruled upon. Petitioner then filed the Motion for Interim Fees on January 9, 2026. ECF No. 67. Respondent filed his response on January 22, 2026. ECF No. 68. Petitioner filed his reply on January 29, 2026. ECF No. 69.

This matter is ripe for consideration.

## II.    Legal Framework

The Vaccine Act permits an award of reasonable attorneys' fees and other costs. § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, petitioner's counsel is automatically entitled to reasonable attorneys' fees. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

"Good faith" is a subjective standard. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

Reasonable basis, however, is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). When determining if a reasonable basis exists, special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). The Federal Circuit concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons*, 875 F.3d at 636; *Amankwaa*, 138 Fed. Cl. at 289.

Reasonable basis is satisfied when there is a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020); s*ee Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of*

*Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012). The Fourth Circuit characterized "more than a mere scintilla of evidence" as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

In discussing the reasonable basis requirement in *Cottingham*, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;
(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
(3) sustained (or had significantly aggravated) an injury set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." § 300aa-13(a)(1). However, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius*, 984 F.3d at 1379-80. While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Human Servs.*, No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Human Servs.*, 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

When good faith and reasonable basis are established, the Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a

4

reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

Special masters also have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera*, 515 F. 3d at 1352. The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id*. at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id*. at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

### III.    Discussion

Respondent requested that any determination as to attorneys' fees and costs be deferred until after briefing on the merits and a hearing, if necessary, and a ruling on entitlement has been made. Response at 1. He pointed out that petitioner stated "in his motion that respondent's counsel identified the existence of potential records relating to petitioner's earaches, that those records indicate that petitioner had otitis media prior to the vaccination at issue, and that the expert petitioner's attorney consulted 'opined [that] the otitis media, having been present for three weeks,[] could be chronic and was a more likely than not cause of the condition (or at least evidence of onset before vaccination) instead of the vaccination.'" *Id*. at 4-5. Thus, respondent argued there is a legitimate question as to whether this case has or ever had a reasonable basis. *Id*. at 5.

This decision reaches no conclusion about the merits of petitioner's claim as it relates to causation, only that he has provided sufficient objective evidence to satisfy reasonable basis[3] as outlined in *Cottingham*. 971 F.3d at 1345-46. The records show that petitioner received the subject vaccine on February 27, 2020. Pet. Ex. 2 at 1. He presented to the emergency room on April 14, 2020, complaining of feeling sick for one month with initial symptoms of an ear infection for which he was prescribed Augmentin and steroids. Pet. Ex. 3 at 82. He was diagnosed with pneumonia. Pet. Ex. 4 at 66.

---

[3] Good faith was not raised by respondent. Thus, petitioner is afforded the presumption of good faith in the filing of his petition.

He called an ambulance on April 19, 2020 for weakness, cough, body aches, an inability to walk, and shortness of breath. Pet. Ex. 4 at 66-74. He reported generalized aching pain of 8/10 with a gradual onset over the past two weeks. *Id*. at 75. Petitioner also reported that he "had a progression of his symptoms since 6 weeks ago" when he had a sore throat, ear ache, and joint pain and was diagnosed with sinusitis. *Id*. at 25, 126. He was assessed with sepsis due to pneumonia, and autoimmune disorder was considered. *Id*. at 127-30. He had an infectious disease consultation with Dr. Chia-Shiuh Chaung, who noted that infectious etiology seemed "less likely", especially bacterial origin; "Patient having improvement in symptoms in past with steroids would suggest possible autoimmune or vasculitic etiology". *Id*. at 28. An autoimmune profile was pending due to concern for a vasculitis/autoimmune process. Nephrology consult was recommended. *Id*. at 31.

Rheumatologist Dr. Eisenberg evaluated petitioner on April 21, 2020 for possible autoimmune disease "due to clinical picture along with ANA titer with a corresponding C-ANCA positivity and markedly elevated ESR." Pet. Ex. 4 at 21, 23. Dr. Eisenberg noted that petitioner met the criteria for probable eosinophilic granulomatosis with polyangiitis. *Id*. at 23, 571. Prednisone was recommended. *Id*. at 577, 579.

Petitioner was discharged from the hospital on April 26, 2020 with a diagnosis of eosinophilic granulomatosis with polyangiitis confirmed on biopsy. Pet. Ex. 4 at 50, 590, 604, 630, 700.

Petitioner continued outpatient treatment with rheumatology and was instructed to continue taking prednisone daily then Cytoxan therapy for GPA. Pet. Ex. 4 at 712, 1159, 1205. In August of 2020, petitioner underwent an open repair of ascending abdominal aortic dissection, which was necessary because of his history of GPA autoimmune disease. *Id*. at 1291, 1303-04, 1457; Pet. Ex. 6 at 10.

Though these initial records filed along with the petition did not mention the subject vaccine as a potential cause of petitioner's condition, his treating providers agreed that his condition was possibly—if not likely—the result of some autoimmune process. Although it is unclear from the records how petitioner's condition could have been caused by the vaccine, that is most often the case in vaccine cases and parties routinely retain experts to explain such matters. The fact that petitioner was unable to produce an expert report does not preclude an award of interim fees here.

Furthermore, a finding of reasonable basis is supported by other vaccine cases where petitioners were found entitled to compensation for the same condition, granulomatosis with polyangiitis. *See, e.g.*, *Vorwerck v. Sec'y of Health & Human Servs.*, No. 18-749V, 2023 WL 3981543 (Fed. Cl. Spec. Mstr. June 12, 2023); *Payne v. Sec'y of Health & Human Servs.*, No. 18-145V, 2022 WL 4462164 (Fed. Cl. Spec. Mstr. Aug. 31, 2022).

Reasonable basis requires a mere scintilla of evidence to support petitioner's claim of causation. *See Cottingham*, 971 F.3d at 1346. That evidence can take many forms, including affidavits and medical records, which have been filed here and show that petitioner received a

covered vaccine, developed an autoimmune condition, and required treatment/monitoring for well beyond six months. *James-Cornelius*, 984 F.3d at 1379-80. While the aforementioned evidence is insufficient to demonstrate entitlement, the burden in proving reasonable basis is lower. Accordingly, I find that petitioner has established a reasonable basis for the filing of his claim based on the medical records detailed above.

Regarding respondent's argument that the records showed petitioner had otitis media prior to the vaccination and that the expert petitioner's attorney consulted opined that the otitis media was a more likely cause of the condition rather than the vaccine, this was discovered later during these proceedings. Caselaw is clear that a claim may be filed with a reasonable basis but lose it as the case progresses if further evidence is unsupportive of petitioner's claim. *See R.K.,* 760 F. App'x at 1012 (citations omitted). The records containing the visits in March of 2020 for otitis media prior to the vaccine were filed on March 6, 2025. Pet. Ex. 30. Respondent filed his Rule 4(c) Report on April 23, 2025, stating his position that this case was not appropriate for compensation. ECF No. 56. Thereafter, petitioner continued to file the medical records that respondent identified as outstanding. On October 8, 2025, petitioner filed a motion to proceed with expert reports, which respondent agreed with, and for extension of time to file outstanding records. ECF No. 64. Within two months thereafter, counsel filed a motion to withdraw as attorney after consulting an expert on causation and receiving a negative response. ECF No. 66.

Counsel explained in the Motion for Interim Fees that he consulted an expert, who summarily opined petitioner's otitis media likely caused his condition—not the vaccine. When he discussed this with petitioner, petitioner claimed he did not have any ear problems prior to the vaccination. Motion for Interim Fees at 10. Counsel appropriately discussed the contradictory evidence in the medical records with his client and determined that, in light of these newly discovered records and the expert opinion that otitis media was likely the cause of his condition, the case lost reasonable basis, thereby preventing counsel from continuing with the case. *Id*. at 10-11; *see also* Motion for Interim Fees, App'x B at 12-14.

It is not necessary to rule on entitlement prior to determining reasonable basis in this matter, as respondent has requested. Special masters are permitted to award fees and costs on an interim basis when warranted. *Woods*, 105 Fed. Cl. at 154; *see also, e.g.*, *Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship in petitioner"). In particular, due to Mr. Greenwood's need to withdraw from this case, I find that an award of interim fees at this juncture is appropriate. *See Weiss on behalf of A.W. v. Sec'y of Health & Human Servs.*, No. 24-546V, 2025 WL 2304491, at *2 (Fed. Cl. Spec. Mstr. July 9, 2025) (finding that an award of interim fees is warranted "almost wholly in light of counsel's withdrawal" and that there were no "identifiable reasonable basis issues" at this point in the proceeding); *Husain v. Sec'y of Health & Human Servs.*, No. 22-1218V, 2025 WL 1409870, at *1 (Fed. Cl. Apr. 8, 2025) ("[T]he withdrawal or substitution of counsel is often deemed reasonable grounds in and of itself for an interim award"). From the records filed, there was a reasonable basis upon which to file this case since the injury alleged had previously been compensated by the Program. Counsel promptly sought to withdraw as attorney of record once he determined the case lost reasonable basis. Under the circumstances of this case, an award of interim fees and costs is warranted.

## A.  Reasonable Hourly Rates

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

The Greenwood Law Firm has been recognized as practicing in forum, entitling the firm to commensurate rates established in *McCulloch*. *See Garrett v. Sec'y of Health & Human Servs.*, No. 14–16V, 2014 WL 6237632, at *6 (Fed. Cl. Spec. Mstr. Oct. 27, 2014). Petitioner requests fees in various rates of compensation for the attorneys and paralegals who worked on this case. The rates requested are as follows:

| Name | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|
| **Mr. Greenwood** | $495 | $545 | $584 | / |
| **Ms. Ochoa** | $200 | / | / | / |
| **Mr. Hebert** | / | / | $219 | / |
| **Ms. Realpe** | / | / | $190 | / |
| Paralegals | $161/$175 | $170/$185 | $182/$205 | $205 |

*See generally* Motion for Interim Fees, App'x B.

The requested rates have been awarded by special masters in previous decisions and are consistent with the rates established in the Fee Schedule. *See Jugon v. Sec'y of Health & Human Servs.*, No. 21-1592V, 2025 WL 3002577 (Fed. Cl. Spec. Mstr. Sept. 17, 2025); *Bettinger v. Sec'y of Health & Human Servs.*, No. 23-1478V, 2025 WL 3267266 (Fed. Cl. Spec. Mstr. Oct. 27, 2025); *Nguyen v. Sec'y of Health & Human Servs.*, No. 21-713V, 2024 WL 3938976 (Fed. Cl. Spec. Mstr. July 25, 2024). Thus, I award the rates as requested herein.

---

[4] The 2015-2026 Fee Schedules can be accessed at https://www.cofc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

8

### B. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of petitioner's motion, I find the hours billed to be reasonable. Counsel has provided detailed billing entries which appear to reasonably correspond with the work performed. The vast majority of hours billed were to obtain and review petitioner's extensive medical records. No entries appear objectionable. Accordingly, the hours billed on this matter are reasonable.

### C. Reasonable Costs

Petitioner requests a total of $3,132.04 in costs. Motion for Interim Fees, App'x B at 14-17; *see generally* Motion for Interim Fees, App'x C. This amount is comprised of medical records requests, postage, the filing fee, and a retainer paid to Dr. Gershwin for expert consultation. *Id*. The undersigned has reviewed the costs and finds them to be reasonable and supported with adequate documentation. Thus, the requested costs are awarded in full.

### IV.    Conclusion

Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED.** Accordingly, I award a total of **$40,755.34**, representing $37,623.30 in fees and $3,132.04 in costs, **to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.** The clerk shall enter judgment accordingly.[5]

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

right to seek review.